United States District Court
Southern District of Texas
**ENTERED**
November 21, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL WAYNE STEWART, | § | |
| (TDCJ # 02491091, SPN #01627160) | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. H-23-1262 |
| | § | |
| SERGEANT, *et al.*, | § | |
| | § | |
| | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

When he was a pretrial detainee in the Harris County Jail, Michael Wayne

Stewart, (TDCJ # 02491091), proceeding *pro se* and *in forma pauperis*, filed a

prisoner's civil rights complaint under 42 U.S.C. § 1983 against multiple jail

officials. (Dkt. 1). In general, he alleged that the defendants violated his

constitutional rights by refusing, in their various capacities, to provide him with a

medication called Norco, which he alleged was the only pain medication that could

treat his chronic neck and back pain. (*Id.*). At the Court's request, Stewart

supplemented his complaint with a more definite statement of his claims. (Dkt. 16).

The Court also requested that Harris County provide a report with administrative

records as permitted by *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997), and

*Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1987) (per curiam). (Dkt. 18).

After reviewing the pleadings as required by 28 U.S.C. § 1915A, the Court dismissed all of Stewart's claims except those against Sheriff Ed Gonzalez and Licensed Vocational Nurse Brittney Beard. (Dkt. 30). Sheriff Gonzalez and Nurse Beard answered Stewart's complaint, (Dkts. 34, 35), and then filed motions for summary judgment supported by various exhibits. (Dkts. 41, 43, 44). Stewart did not respond to the motions, and his time to do so has now expired. Having reviewed the motions, the summary judgment evidence, all matters of record, and the applicable law, the Court grants the defendants' motions for summary judgment and dismisses Stewart's action with prejudice.

## I.   **BACKGROUND**

On April 3, 2023, Stewart filed a lengthy civil rights complaint under § 1983 based on events that occurred had occurred since his detention in the Harris County Jail began in December 2022. (Dkt. 1). In general, Stewart alleged that jail officials were refusing to treat him for the severe chronic neck and back pain that he suffered as the result of preexisting injuries. (*Id.* at 6). At the Court's request, Stewart also filed a more definite statement of his claims. (Dkt. 16).

In his pleadings, Stewart alleged that he originally injured his neck and back in a 2012 vehicle accident. (Dkt. 16, p. 2-3). He alleged that when he was incarcerated by TDCJ, he was prescribed Norco for the pain from these injuries. (*Id.*

at 3). This prescription was continued by his doctor once he was released from TDCJ, and it was continued again by jail medical providers when he first arrived at the Harris County Jail in January 2020. (*Id.* at 5). But when Stewart returned to the Harris County Jail in December 2022 after a brief time back in TDCJ custody, the medical providers would not prescribe Norco for him. (*Id.* at 6). Instead, the medical providers prescribed gabapentin, Celebrex, and tramadol to treat his pain— medications that Stewart alleged are ineffective. (*Id.* at 7).

Stewart alleged that the refusal to prescribe Norco was based on a jail policy of denying all detainees access to Norco regardless of medical necessity. (Dkt. 1, p. 5). Stewart alleged that this policy denied him proper treatment for his serious medical conditions and resulted in deliberate indifference to his serious medical needs, in violation of his Eighth Amendment rights. (*Id.* at 5-6). He alleged that Sheriff Gonzalez is liable for this constitutional violation because he was the official responsible for creating and implementing the policy. (*Id.* at 9).

Despite these allegations about an alleged policy denying Norco to all detainees, Stewart also alleged that after multiple clinic visits, grievances, and complaints to the ombudsman by Stewart's mother, he saw "Dr. Al" in February 2023, and she prescribed Norco for him. (Dkts. 1, pp. 15-16; 16, p. 7). But within a day or two, the nursing staff, and specifically Nurse Beard, refused to dispense the

medication to Stewart, saying that he did not have a valid prescription for it. (Dkts. 1, pp. 16-17; 16, p. 7). Stewart alleged that this interference with his prescribed treatment was in retaliation for him having filed grievances against Nurse Beard. (Dkt. 16, pp. 7, 16-17). Stewart also alleged that Nurse Beard retaliated against him by refusing to allow him to see a medical provider after he was assaulted by other inmates; instead requiring him to see a nurse practitioner who was not authorized to prescribe Norco. (*Id.* at 16-17).

As relief for the alleged violations of his constitutional rights, Stewart sought an injunction requiring the jail to provide him with Norco, an injunction requiring the jail to refer him to a spinal cord specialist, and an award of compensatory and punitive damages. (Dkt. 1, pp. 19-20).

After screening, the Court ordered Sheriff Gonzalez to respond to Stewart's claim that he had implemented an official policy that denied Norco to jail detainees regardless of their medical need for that drug. (Docket Entry No. 30). The Court dismissed the remaining claims against Sheriff Gonzalez. (*Id.*). The Court ordered Nurse Beard to respond to Stewart's claims that she displayed deliberate indifference to his pain and suffering by refusing to dispense Norco to him and by refusing to permit him to see a medical provider. (*Id.*). In addition, the Court ordered her to respond to Stewart's claim that she retaliated against him for filing grievances

4/21

against her by interfering with his medical care and treatment. (*Id.*).

Sheriff Gonzalez and Nurse Beard each answered the complaint and then each filed a motion for summary judgment. (Dkts. 34, 35, 41, 43). In support of his motion for summary judgment, Sheriff Gonzalez submitted the affidavit of Sergeant Erik Larson, along with an authenticated copy of the Harris County Jail Health Services Plan. (Dkts. 41-1, 41-2). Sheriff Gonzalez contends that these documents conclusively show that the jail does not have a policy of denying detainees Norco or any other medication for which they have valid prescriptions. (Dkt. 41, p. 3).

In her motion for summary judgment, Nurse Beard contends that Stewart's medical records conclusively show that she never denied him any medication for which he had a valid prescription. (Dkt. 43, pp. 14-17). She also contends that the records show that she never prevented Stewart from seeing medical providers and that any delay in treatment he may have experienced was *de minimis*. (*Id.* at 17-18). In support of her motion, Nurse Beard submitted portions of Stewart's medical and grievance records from his time at the jail. (Dkts. 43-2, 43-3).

Stewart did not respond to either motion for summary judgment, and his time to do so has now expired.

## II.    APPLICABLE LAW

### A.    Actions Under 42 U.S.C. § 1983

Stewart brings his claims against Sheriff Gonzalez and Nurse Beard under 42

U.S.C. § 1983. "Section 1983 does not create any substantive rights, but instead was

designed to provide a remedy for violations of statutory and constitutional rights."

*Lafleur v. Texas Dep't of Health*, 126 F.3d 758, 759 (5th Cir. 1997) (per curiam);

*see also Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To state a valid claim

under § 1983, the plaintiff must (1) allege a violation of rights secured by the

Constitution or laws of the United States, and (2) demonstrate that the alleged

deprivation was committed by a person acting under color of state law. *See West v.*

*Atkins,* 487 U.S. 42, 48 (1988); *Gomez v Galman*, 18 F.4th 769, 775 (5th Cir. 2021)

(per curiam). The dispute in this case focuses on the first element: whether Sheriff

Gonzalez and Nurse Beard violated Stewart's constitutional rights.

### B.    Summary-Judgment Standard

Sheriff Gonzalez and Nurse Beard responded to Stewart's complaint with

motions for summary judgment. "Summary judgment is appropriate only if 'the

movant shows that there is no genuine issue as to any material fact and the movant

is entitled to judgment as a matter of law.'" *Tolan v. Cotton,* 572 U.S. 650, 656-57

(2014) (per curiam) (quoting FED. R. CIV. P. 56(a)). "The movant bears the burden

of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.,* 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-25 (1986)).  "A fact is material if its resolution could affect the outcome of the action." *Dyer v. Houston,* 964 F.3d 374, 379 (5th Cir. 2020) (quoting *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 134 (5th Cir. 2010)).  "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (per curiam) (cleaned up).

When considering a motion for summary judgment, the Court must view all evidence and draw all inferences "in the light most favorable to the [nonmoving] party." *Tolan*, 572 U.S. at 657 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)); *see also Dyer*, 964 F.3d at 380.  However, if record evidence clearly contradicts the plaintiff's version of events, the Court "should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Waddleton v. Rodriguez*, 750 F. App'x 248, 253-54 (5th Cir. 2018) (per curiam) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).  Moreover, the Court will not consider the nonmoving party's conclusory allegations and unsubstantiated assertions as evidence.  *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en

7/21

banc).  After viewing the offered evidence in the light most favorable to the nonmoving party, summary judgment may be granted only if no genuine disputes of fact exist and no reasonable jury could return a verdict for the nonmoving party.  *See, e.g., Rubinstein v. Adm'rs of the Tulane Educ. Fund,* 218 F.3d 392, 399 (5th Cir. 2000).

### C.    *Pro Se* Pleadings

Because Stewart is proceeding *pro se*, the Court construes his filings liberally, subjecting them to "less stringent standards than formal pleadings drafted by lawyers[.]"  *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).  But even under this lenient standard, *pro se* litigants must still "abide by the rules that govern the federal courts."  *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) (quoting *Frazier v. Wells Fargo Bank, N.A.*, 541 F. App'x 419, 421 (5th Cir. 2013) (per curiam)).  "*Pro se* litigants must properly plead sufficient facts that, when liberally construed, state a plausible claim to relief, serve defendants, obey discovery orders, present summary judgment evidence, file a notice of appeal, and brief arguments on appeal."  *Id.* (footnotes omitted).

### III.    DISCUSSION

### A.    Claims Against Sheriff Gonzalez

After screening, the Court ordered Sheriff Gonzalez to respond to Stewart's

claim that Sheriff Gonzalez had implemented and enforced a policy that unconstitutionally denied Stewart medically necessary treatment. The summary judgment evidence establishes that Stewart is not entitled to relief.

While Stewart identifies Sheriff Gonzalez as the defendant, an action against an individual municipal official in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009) (cleaned up). Thus, Stewart's action is effectively one against Harris County. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

A municipality such as Harris County is not liable for constitutional violations committed by its employees unless the alleged violations resulted from a municipal policy. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). Therefore, to establish municipal liability, the plaintiff must show that an official policy promulgated and implemented by a municipal policymaker was the moving force behind the violation of his constitutional rights. *Id.*; *see also Groden v. City of Dallas, Tex.,* 826 F.3d 280, 283 (5th Cir. 2016) (citing *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009)); *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

In this case, Stewart contends that Sheriff Gonzalez implemented an official

policy that denied all jail detainees access to a specific medication, even if that medication was necessary for a particular detainee's care and ordered by a jail physician. He alleges that he was denied a medically necessary medication as a result of this policy. If proven true, these allegations could potentially support a claim for municipal liability.

However, Sheriff Gonzalez has filed the Harris County Jail healthcare policy in support of his motion for summary judgment. Under that policy, all healthcare decisions, including decisions about which medications will be prescribed to jail detainees, are made solely by the medical providers who contract with the jail to provide healthcare services to detainees. The policy does not forbid a medical provider from prescribing any medication that the provider believes, in the exercise of his or her professional medical judgment, is necessary for the care and treatment of a particular detainee. This evidence shows that any decisions concerning Stewart's medical treatment resulted from the individual decisions of the jail's medical providers rather than a policy promulgated by Sheriff Gonzalez, and it negates Stewart's claim against Sheriff Gonzalez in his official capacity.[1]

Faced with this evidence, to avoid summary judgment Stewart had the burden

---

[1]The Court notes that Sheriff Gonzalez's position is also supported by Stewart's own contradictory allegations, which show that despite any purported policy against providing Norco to any detainee, Stewart was later prescribed Norco by a jail medical provider.

to come forward with evidence sufficient to create a genuine dispute of material fact

as to whether Sheriff Gonzalez implemented a policy that resulted in Stewart being

denied medically necessary care.  But Stewart did not respond to Sheriff Gonzalez's

motion for summary judgment, and Stewart's unsupported allegations concerning

jail policies are insufficient to raise the genuine issues of fact necessary to avoid

entry of summary judgment.  Accordingly, Sheriff Gonzalez's motion for summary

judgment is granted, and Stewart's claim against Sheriff Gonzalez in his official

capacity is dismissed with prejudice.

### B.   Claims Against Nurse Beard

Stewart seeks money damages from Nurse Beard based on his claims that she

violated his Eighth Amendment rights by being deliberately indifferent to his pain

and suffering and by retaliating against him for filing grievances against her.  The

competent summary judgment evidence contradicts Stewart's claims.

### 1.   Claims for Deliberate Indifference

The Eighth Amendment imposes a duty on prison officials to "provide

humane conditions of confinement; prison officials must ensure that inmates receive

adequate food, clothing, shelter, and medical care, and must take reasonable

measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825,

832 (1994) (cleaned up).  A prison official violates this duty when, whether by act

11/21

or omission, he or she is deliberately indifferent to conditions that pose a substantial

risk of serious harm to the inmate. *Id.* at 834.

In the context of claims concerning adequate medical care, an inmate seeking

relief under § 1983 must allege and prove that jail officials acted with deliberate

indifference to his serious medical needs. *See Estelle v. Gamble,* 429 U.S. 97, 105

(1976); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991) (per curiam).  To

establish deliberate indifference, "a plaintiff must demonstrate that the official is

aware that an inmate[ ] face[s] a substantial risk of serious harm and disregards that

risk by failing to take reasonable measures to abate it." *Davis v. Lumpkin*, 35 F.4th

958, 963 (5th Cir. 2022) (quoting *Farmer*, 511 U.S. at 837).  Prison officials who

act reasonably are not deliberately indifferent; only officials who "recklessly" or

"consciously" disregard a known substantial risk of serious harm act with deliberate

indifference. *Farmer*, 511 U.S. at 836.

### a.   Refusal to Provide Medication

Stewart alleges that Nurse Beard acted with deliberate indifference when she

refused to dispense the Norco that he contends was lawfully prescribed for him.

When a prison official interferes with medical treatment that has been lawfully

prescribed, that action may rise to the level of deliberate indifference. *See Estelle*,

429 U.S. at 104-05; *see also Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir.

2006) (noting that the "serious medical need" required for a showing of deliberate indifference is one for which treatment has been recommended or for which the need is so apparent that even a layman would recognize that care is required). But the undisputed summary judgment evidence shows that Stewart had no prescription for Norco with which Nurse Beard interfered.

Stewart's authenticated medical records show that he was not prescribed Norco by any jail medical provider until February 15, 2023. On that date, Stewart was seen as a walk-in patient at the medical clinic by Dr. Alzubaidy. (Dkt. 43-2, p. 16). Stewart reported to her that his current pain medications "do not work," and he requested "adequate" pain medication. (*Id.*). In response, Dr Alzubaidy issued a prescription for 30 days of Norco to be given twice a day, and Stewart was given his first dose of Norco at that time. (*Id.* at 26-28, 44-45).

The next morning, Stewart was transferred from one jail facility to another. (*Id.* at 25). The prescribed Norco was not available at the new location, so Nurse Practitioner Goral-Gumm placed a "hold" on the prescription and ordered that Stewart be given tramadol in place of Norco until she could consult with the physicians. (*Id.*). Later that morning, when Nurse Rodriguez was dispensing medications to inmates, she gave Stewart Celebrex and tramadol rather than Norco. (*Id.* at 24-25). Stewart verbally assaulted Nurse Rodriguez, insisting that he had

been prescribed Norco. (*Id.*). Ultimately, however, Stewart took the medications that were dispensed. (*Id.* at 25). Nurse Beard was not involved with this interaction.

Later in the day, Dr. Alzubaidy consulted with Dr. Lockett and Nurse Practitioner Goral-Gumm about Stewart's medications. (*Id.* at 24). During that meeting, the three providers decided that Stewart should be prescribed Celebrex rather than Norco to see whether that would be sufficient to address his pain. (*Id.*). Based on that discussion, Dr. Alzubaidy canceled the prescription for Norco and instead prescribed Celebrex and tramadol to treat Stewart's pain. (*Id.*). Nurse Beard was not involved in this discussion. (*Id.*). Norco was not prescribed for Stewart again until June 2023—more than two months after this action was filed. (*Id.* at 8, 45).

The day after the incident with Nurse Rodriguez, Stewart filed a grievance stating that Nurse Beard had refusing to provide him with the Norco that Dr. Alzubaidy had prescribed. (Dkt. 43-3, pp. 9-10). However, the medical records show that Nurse Beard did not dispense medications to Stewart at any time between February 15 and 20, 2023. (*Id.* at 24). And while Nurse Beard did not dispense Norco to Stewart on February 20, 2023, by that time, Dr. Alzubaidy had canceled the order for that medication.

These records conclusively refute Stewart's allegation that Nurse Beard

intentionally interfered with a treatment that had been properly ordered for him by refusing to dispense the Norco that had been prescribed by Dr. Alzubaidy. Nurse Beard was not involved in the decision to cancel Stewart's prescription for Norco, and she did not distribute medications to him until after that prescription had been canceled. Nurse Beard cannot be deliberately indifferent by refusing to provide Stewart with a medication that was no longer prescribed for him, and her alleged actions in doing so are reasonable rather than reckless.

Once Nurse Beard submitted evidence showing that she did not intentionally interfere with a lawful prescription order, the burden shifted to Stewart to come forward with evidence sufficient to create a genuine dispute of material fact. But Stewart did not respond to Nurse Beard's motion for summary judgment, and his unsupported allegation that Nurse Beard refused to provide him with a lawfully prescribed medication is insufficient to raise a genuine issue of fact necessary to avoid entry of summary judgment. Accordingly, Nurse Beard is entitled to summary judgment in her favor on Stewart's claim based on an intentional interference with medical orders. Her motion for summary judgment as to this claim is granted.

### b. Refusal to Allow Access to Providers

Stewart also alleges that Nurse Beard was deliberately indifferent to his serious medical needs when she refused to permit him to see a medical provider after

he was assaulted by other inmates. Again, the medical records contradict Stewart's claim.

Stewart's allegations concerning this claim are not a model of clarity. However, as best can be determined from his pleadings and the medical and grievance records provided both in the *Martinez* report and by Nurse Beard, Stewart was involved in a fight with other inmates sometime between January 23 and 27, 2023. (Dkt. 25-1, pp. 7-8). On January 27, 2023, he was seen by a primary care physician in the medical clinic, where he complained of neck pain as a result of the assault. (Dkts. 25-2, pp. 436-41; 43-2, p. 11). No swelling or bruising was noted, and he was diagnosed with neck tenderness and prescribed ibuprofen, in addition to his regular pain medications, to help with the additional pain. (Dkts. 25-2, p. 438). Stewart was seen the same day for a pre-existing neurosurgery consultation, which determined that his back and neck conditions were stable. (*Id.* at 432).

On January 31, 2023, Stewart wrote a grievance alleging that he was escorted to the medical clinic by a detention deputy on January 28, 2023, because he was having severe pain from the earlier assault. (Dkt. 25-1, pp. 7-8). Stewart alleges that at the clinic, Nurse Beard refused to allow him to see a provider. (*Id.*). Stewart alleges that Nurse Beard "forced" him to wait 30 to 45 minutes before finally allowing him to see the head nurse. (Dkt. 1, p. 16). Stewart's grievance about this

incident, which contended that he was denied medical care, was returned as unfounded because Stewart was seen by medical providers on January 27, January 31, February 1, and February 2 for his alleged injuries from the assault. (Dkt. 43-3, p. 3).

Stewart's medical records, and indeed his own allegations, do not support his claim that Nurse Beard refused to allow him to be seen by a provider on January 28. Instead, those records and allegations show that Stewart experienced a delay of less than one hour before seeing a medical provider. Stewart has failed to carry his burden to come forward with evidence showing that Nurse Beard ever denied him access to medical care, and his unsupported allegations of such a denial are insufficient to avoid summary judgment.

Moreover, even if there was some evidence that Stewart experienced in delay in receiving treatment, he would still not be entitled to relief on this claim. To be entitled to relief under § 1983 based on a delay in care, the plaintiff must show that he suffered substantial harm because of the delay. *See Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415, 422 (5th Cir. 2017) (per curiam); *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). While pain suffered during a delay can constitute substantial harm, *see Alderson*, 848 F.3d at 422, the plaintiff must show that the pain was sufficiently severe to constitute substantial harm. *Compare Westfall*, 903 F.3d

at 551 (finding no substantial harm when the plaintiff's spinal injury was not "impacted" by a 30 to 45-minute delay in care and the plaintiff alleged only that, during the delay, she was "moaning in pain."); *Richard v. Martin*, 390 F. App'x 323, 325 (5th Cir. 2010) (per curiam) (plaintiff's "neck pain, which resolved within a few weeks, and chronic mild back pain" were not sufficient to establish substantial harm resulting "from the alleged 10-day delay in seeing a nurse and/or the 20-day delay in being taken to a doctor"); *and Bisby v. Garza*, 342 F. App'x 969, 971 (5th Cir. 2009) (per curiam) (finding that pain following a fall was not sufficiently severe during an hours-long delay in receiving an evaluation), *with Galvan v. Calhoun County*, 719 F. App'x 372, 375 (5th Cir. 2018) (per curiam) (holding that an inmate eventually diagnosed with calculus of gallbladder with acute cholecystitis showed substantial harm when he alleged that he made repeated requests over several days to be taken to the hospital for pain "so severe that he thought he might die."); *Coleman v. Sweetin*, 745 F.3d 756, 765-66 (5th Cir. 2014) (per curiam) (finding substantial harm from a month-long delay in treatment for a broken hip during which the plaintiff "was in so much pain that he was unable to lie down in bed or use the toilet properly," pain overtook his entire body, he was "out of it" due to the pain, and doctors eventually inserted four pins and a plate during hip surgery); *and Harris v. Hegmann*, 198 F.3d 153, 159-60 (5th Cir. 1999) (per curiam) (finding substantial

18/21

harm due to a week-long delay in treatment for a broken jaw).

In this case, the summary judgment evidence shows that Stewart has chronic pain in his neck and upper back because of his pre-existing conditions. After a fight with other inmates, he was seen in the medical clinic, where he was diagnosed with neck tenderness for which the medical provider prescribed ibuprofen. Stewart returned to the clinic the next day complaining of severe pain, where Nurse Beard delayed his evaluation with a provider by at most 30 to 45 minutes. This short delay in receiving additional care for some unquantified amount of pain is not sufficient to constitute the substantial harm necessary to support a claim for deliberate indifference against Nurse Beard.

Stewart did not respond to Nurse Beard's motion, and he has offered no evidence either supporting his claim that he suffered an undue delay in receiving care or contradicting the medical and grievance records that show no undue delay. Having failed to offer evidence sufficient to show that genuine disputes of fact exist concerning whether Nurse Beard was deliberately indifferent Stewart's serious medical needs, Stewart cannot avoid entry of summary judgment in her favor. His claims against her on this basis are dismissed.

### 2. **Claim for Retaliation**

In addition to his deliberate indifference claims, Stewart also alleges that

Nurse Beard retaliated against him for filing grievances against her by denying him Norco and denying him access to medical care. The summary judgment evidence contradicts these claims.

It is undisputed that prison officials may not retaliate against an inmate for exercising his right to complain about misconduct. *See Ibenyenwa v. Wells*, No. 21-40241, 2022 WL 413941, at *1 (5th Cir. Feb. 10, 2022) (per curiam), *cert. denied,* 143 S. Ct. 236 (2022). To succeed on a § 1983 claim for retaliation, the inmate must prove that (1) he exercised a constitutional right which (2) the official intended to retaliate against, and (3) the prisoner's exercise of his constitutional right caused (4) the official to commit a retaliatory act that was more than *de minimis*. *See Petzold v. Rostollan*, 946 F.3d 242, 252 (5th Cir. 2019) (citing *Butts v. Martin*, 877 F.2d 571 (5th Cir. 2017)). In determining whether the retaliatory act was *de minimis*, the Fifth Circuit has explained that "a single incident, involving a minor sanction, is insufficient to prove [retaliatory] harassment." *Morris v. Powell*, 449 F.3d 682, 685 (5th Cir. 2006) (quoting *Gibbs v. King*, 779 F.3d 1040, 1046 (5th Cir. 1986)).

Stewart's claim fails on this fourth element. As explained above, Nurse Beard did not commit a retaliatory act by denying Stewart Norco because he was not prescribed Norco at the time of her alleged action. And any possible retaliation by delaying Stewart from seeing a medical provider for 30 to 45 minutes on January 28

was a minor sanction that does not rise to the level necessary to prove retaliatory harassment.

Stewart has failed to point to any evidence that would create a genuine dispute of fact as to his claim of retaliation, and his conclusory allegations of a retaliatory motive are insufficient to overcome Nurse Beard's motion for summary judgment. Having failed to carry his burden at summary judgment, Stewart's claim for retaliation against Nurse Beard must be dismissed.

## IV.  **CONCLUSION**

Based on the above, the Court **ORDERS** as follows:

1. The defendants' motions for summary judgment, (Dkts. 41, 43), are **GRANTED**.

2. Stewart's action against all defendants is **DISMISSED with prejudice**.

3. Any pending motions are **DENIED as moot**.

4. Final judgment will be separately entered.

The Clerk will provide a copy of this Order to the parties.

SIGNED at Houston, Texas, on _____*Nov 21*_____, 2024.

DAVID HITTNER
UNITED STATES DISTRICT JUDGE